J-A11032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LYNDAMARIE K. COMEROSKY | |
| Appellant | No. 1233 MDA 2018 |

Appeal from the Judgment of Sentence Entered March 9, 2018
In the Court of Common Pleas of Luzerne County
Criminal Division at No: CP-40-CR-0000723-2016

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 24, 2019**

Appellant, Lyndamarie K. Comerosky, appeals from the March 9, 2018 judgment of sentence imposing six months of incarceration followed by 36 months of house arrest for endangering the welfare of a child ("EWOC")[1] and 12 months of probation, concurrent with house arrest, for recklessly endangering another person[2] ("REAP").  We affirm.

On December 30, 2015, fire fighters responded to a fire at the home of Appellant, her husband George Comerosky ("Husband"), and the victim, their 11-year-old daughter.  Firefighters extinguished the fire quickly, limiting the damage to the kitchen.  Nobody was injured.  Law enforcement determined

---

[1]  18 Pa.C.S.A. § 4304.

[2]  18 Pa.C.S.A. § 2705.

that the fire was accidental, caused by combustible material sitting on the kitchen stovetop. Police charged Appellant with the aforementioned offenses based on the deplorable conditions observed in Appellant's home during the investigation. The house was littered with animal feces throughout the house, uneaten food, dirty dishes, dirty clothes, and garbage. N.T. Trial, 1/23-24/18, at 117-143. The home's smoke detectors had been removed. *Id.* at 125-26. A putrid smell pervaded the house. *Id.* at 143. Firefighters had to crawl over piles of debris to enter the home and get to the fire. *Id.* at 24-25.

At the conclusion of trial, a jury found Appellant guilty of the aforementioned charges. The trial court imposed sentence on March 9, 2018. Appellant filed a timely post-sentence motion seeking a new trial, and the trial court denied relief on July 9, 2018. This timely appeal followed. Appellant raises four issues for our consideration:

1. Whether the evidence was sufficient to prove guilt beyond a reasonable doubt?

2. Whether the court erred by denying [Appellant's] pre-trial motion to preclude the testimony of Trooper Ronald Jarocha as any probative value was outweighed by unfair prejudice?

   a. Whether the court erred by allowing Trooper Ronald Jarocha to testify and/or rely on statements made by George Comerosky as such statements were made by a deceased individual—who when alive had 5th Amendment issues—not available for cross examination and therefore such action violated [Appellant's] Due Process rights and right to confrontation guaranteed by both the Pennsylvania and United States Constitution?

3. Did the court err by not allowing [Appellant] to call Patricia Bigus, an investigator for Children and Youth, as a witness?

> 4. Was the verdict against the weight of the evidence insofar as there was ample evidence that the child's welfare was not endangered?

Appellant's Brief at 10-11.

As to the sufficiency of the evidence, Appellant claims that the conditions of the home did not support criminal liability under the EWOC and REAP statutes. We are constrained to agree with the trial court's conclusion that Appellant has waived this. In her Pa.R.A.P. 1925(b) statement, Appellant claimed, without further specification, that "the evidence was insufficient to prove her guilt beyond a reasonable doubt[.]" Appellant's Pa.R.A.P. 1925(b) Statement, 8/14/18, at 1. Appellant did not state whether she was challenging the EWOC or REAP conviction, or both, and she did not identify any element of either offense that the Commonwealth failed to prove. This failure results in waiver. *Commonwealth v. Roche*, 153 A.3d 1063, 1071 (Pa. Super. 2017), *appeal denied*, 169 A.3d 599 (Pa. 2017).

Next, Appellant challenges the trial court's denial of Appellant's pre-trial motion to limit the testimony of Trooper Jarocha. The Commonwealth presented Jarocha as an expert on the cause of the fire. Appellant's argument is twofold. First, she argues that Trooper Jarocha testified to many facts that were not pertinent to his expert opinion and that his status as an expert improperly bolstered his credibility as to those facts. Second, Appellant argues that Trooper Jarocha should not have been permitted to recount a conversation he had with Husband during his investigation. According to

Trooper Jarocha's testimony, Husband stated that he believed he bumped a burner nob on the kitchen oven while combustible material was sitting on top of the burners. Husband was facing criminal charges for the condition of the home but passed away prior to trial. Appellant argues that admission of his statements was akin to admission of hearsay from a non-testifying co-defendant.

Admission of evidence rests within the sound discretion of the trial court, and we will reverse the trial court's decision only for an abuse of that discretion. *Commonwealth v. Sherwood*, 982 A.2d 483, 495 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010). "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* Rule 705 of the Pennsylvania Rules of Evidence requires an expert witness "to state the facts or data on which the expert opinion is based." Pa.R.E. 705.

Trooper Jarocha testified that he examined and photographed every room in the house as part of his investigation of the fire's origin. N.T. Trial, 1/23-24/18, at 78-79. Trooper Jarocha's photographs were admitted into evidence without objection from the defense. *Id.* at 80-81. In describing his photographs of each room, Trooper Jarocha identified large amounts of debris, such as trash, clothing, garbage, and dog and cat feces. *Id.* at 87-93.

In summary, Trooper Jarocha testified that an investigation into the cause of a fire includes a thorough examination of the entire structure in which the fire occurred. Appellant offers no evidence or argument to establish that experts in the field of fire investigations cannot or do not reasonably rely upon a thorough examination of the burned structure in forming a conclusion as to the fire's origin. In this sense, Trooper Jarocha's testimony complies with the letter of Rules 703 and 705.

Appellant, however, argues that Trooper Jarocha's testimony as to the putrid conditions throughout the house was unnecessary inasmuch as the fire occurred in the kitchen and much of the fire damage was confined to the kitchen. To this end, Appellant cites **Commonwealth v. Montavo**, 653 A.2d 700, 705 (Pa. Super. 1995), **appeal denied**, 663 A.2d 689 (Pa. 1995), for the well-settled proposition that expert opinion testimony is proper for matters beyond the knowledge, information, or skill of an ordinary juror. And, while a witness can offer both lay and expert opinion, **see Commonwealth v. Yocolano**, 169 A.3d 47, 62 (Pa. Super. 2017), Appellant notes that, in such a case, the trial court must instruct the jury as to the difference between the two. The trial court gave no such instruction here.

We acknowledge that a large portion of Trooper Jarocha's testimony described the condition of parts of rooms that obviously had no fire damage, but we disagree with Appellant's contention that Trooper Jarocha offered opinion testimony as to the condition of the home. The only opinion Trooper

Jarocha offered was his opinion as to the origin of the fire. His description of each room, as he observed it during his investigation, and as depicted in his photographs, was factual testimony. He never opined that the house was dangerously unsanitary, nor did he offer any other opinion testimony outside the scope of his expert qualifications. The photographs were admitted into evidence and published to the jury without objection from Appellant, and they speak for themselves. Furthermore, the Commonwealth produced several other witnesses who testified as to the condition of Appellant's home. We discern no abuse of discretion in the trial court's admission of Trooper Jarocha's factual observations of the condition of Appellant's home.

Next, we consider the admission of Husband's statement to Trooper Jarocha. Appellant argues that admission of Husband's statement through Trooper Jarocha was akin to admitting hearsay from a non-testifying co-defendant. Appellant argues that admission of Husband's statement violated her Sixth Amendment right to confront the witnesses against her, as set forth in **Bruton v. United States**, 391 U.S. 123 (1968). In **Bruton**, the prosecution introduced a witness who testified that defendant confessed to committing the crime with the help of codefendant. **Id.** at 124. The trial judge admitted the testimony and instructed the jury that it was admissible against defendant but not codefendant. **Id.** at 125. The United States Supreme Court held that, "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial

statements in determining petitioner's guilt, admission of [the confession] in this joint trial violated petitioner's right of cross-examination[….]" **Id.** at 126. In its brief, the Solicitor General's office conceded that a new trial was appropriate, and that, other than defendant's confession, the evidence against codefendant was not strong. **Id.** at 125.

**Bruton** plainly has no direct application because this was not a joint trial, and Husband's statement was not, strictly speaking, a confession. He did not reference any of Appellant's conduct. Moreover Appellant's brief does not explain how Husband's statement amounted to a confession to either EWOC or REAP, or any element thereof. The record reflects that the criminal complaint referenced the fire hazard only in connection to REAP,[3] which the Pennsylvania Crimes Code defines as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

The record reflects that Trooper Jarocha identified the source of the fire before he spoke with Husband:

> At this point, I had begun removing the debris from the stove. At first, my first observation of removing it, I take it off by layers so I carefully take off the items on the range. At first, the first layer is what I normally typically expect to see in a kitchen

---

[3] At the pre-trial hearing, Appellant argued for exclusion of Trooper Jarocha's testimony as irrelevant to either crime as charged. N.T. Motion, 6/18/17, at 2-4. The Commonwealth countered that the REAP charge referenced the combustible debris on the stovetop. **Id.** at 4-5.

fire. You have food and cans of stuff that were up in the cabinet.
People keep stuff in the cabinet above it. As the fire progress [sic]
from that point, the cabinet fails and the products fall out. At first
it was very—what I would expect to see.

[…]

As I removed that layer, I became—I came down to the next
layer which consisted of, like, magazines, stuff that—mail,
envelopes, stuff you would receive in the mail. That was placed
on top of the stove prior to the fire.

N.T. Trial, 1/23-24/18, at 96.

After making these observations, Trooper Jarocha spoke with Husband:

"And when I spoke to him, I asked him is it common for him to have that—

have these materials, combustible materials on top of the range. He said yes,

it is. He says we don't normally use our stove." N.T. Trial, 1/23-24/18, at

97-98. Also, Husband told Trooper Jarocha that he may have moved the

burner knob when he "squeezed in between the refrigerator and the stove."

*Id.* at 99.

Thus, we are not faced here with the highly incriminating confession of

a non-testifying codefendant, as was the case in **Bruton**. Instead, we have a

fire investigation in which the investigator found a burner knob in the "light"

position and combustible debris on top of a stove. Husband's statement

largely confirmed facts already known to Trooper Jarocha, and to which

Trooper Jarocha could testify with or without Husband's statement. There are

two facts, however, that Husband seemingly added. First, Husband believed

he bumped the burner knob, and second, Husband admitted it was common

to store combustible items on the stovetop because the couple did not use it for cooking. Appellant does not offer a coherent argument for why the trial court should have excluded either, and we could reject her argument on that basis alone. Even if we assume that the couple's habit of storing combustible items on the stovetop, combined with the possibility of bumping a burner knob while traversing a cramped and cluttered kitchen, were incriminating facts, any error in their admission was harmless.

> An error is harmless if it could not have contributed to the verdict. In other words, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. We have found harmless error where:
>
> (1) the error did not prejudice the defendant or the prejudice was *de minimis;*
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.
>
> The Commonwealth has the burden of proving harmless error beyond a reasonable doubt.

***Commonwealth v. Wright***, 961 A.2d 119, 143 (Pa. 2008).

Instantly, Husband's testimony was merely cumulative of other identical evidence. Specifically, Trooper Jarocha testified to his personal observation of combustible debris on top of the stove, where he believed the fire started. He also testified to his observation of the burner in the light position. Trooper Jarocha took a photograph depicting charred combustible debris on the

stovetop, and the Commonwealth moved that photograph into evidence without objection from the defense. The cramped and cluttered condition of the kitchen was well attested even without Husband's statement. Any error in permitting Trooper Jarocha to recount Husband's statement was harmless beyond a reasonable doubt.

Next, Appellant argues that the trial court erred in refusing to permit Patricia Bigus, a Children and Youth Services ("CYS") investigator, to testify on her behalf. Appellant sought to introduce Bigus because Commonwealth witness Sergeant Scott Davis testified that he called Children and Youth Services. N.T. Trial, 1/23-24/18, at 151. Bigus would have testified that she investigated and found the claim against Appellant unfounded and did not remove Appellant's daughter from the home.[4] The trial court deemed Bigus' testimony irrelevant because she never visited the house where the fire occurred. Rather, Bigus visited Appellant's family after they had been relocated to a new apartment. *Id.* at 167-70.

As noted above, admission of evidence rests within the sound discretion of the trial court. **Sherwood**, 982 A.2d at 495. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the

---

[4] We observe that the trial court permitted Appellant to offer the testimony of her daughter's pediatrician, who testified that she had no health problems in the months leading up to the fire, and the daughter's school principal, who testified that she did well in school. N.T. Trial, 1/23-24/18, at 173-183.

action." Pa.R.E. 401. In her brief, Appellant claims that Bigus' testimony was necessary to "refute inflammatory claims made by Commonwealth witness [Sergeant Davis] regarding the involvement of CYS." Appellant's Brief at 51. We find this argument unavailing because Sergeant Davis never mentioned CYS until defense counsel brought it out on cross-examination. Appellant cites pages 57a and 60a in support of her argument that Sergeant Davis testified that the condition of the home prompted him to call CYS. Appellant's Brief at 51. Pages 140 through 143 of the trial transcript, which appear on page 57a of the reproduced record and contain some of the prosecutor's direct examination of Sergeant Davis, contain no reference to CYS. N.T. Trial, 1/23-24/18, at 140-43. Sergeant Davis referenced CYS on two occasions in response to questions from defense counsel. *Id.* at 151, 154. On the first occasion, Appellant did not object to Sergeant Davis' answer as nonresponsive. *Id.* at 151. On the second occasion, defense counsel's question directly referenced CYS. *Id.* at 154. Appellant's complaint of Sergeant Davis' "inflammatory claims" is not well taken, inasmuch as defense counsel elicited those claims.

Additionally, Appellant does not dispute the fact that Bigus never visited the home where the fire occurred. She investigated after the family had been relocated to a new apartment and found no cause to remove Appellant's daughter from the home. The instant charges stem entirely from the condition of Appellant's home prior to her relocation. Appellant has failed to explain

how Bigus' testimony would have made any fact of consequence more or less probable. We discern no abuse of discretion in the trial court's exclusion of Bigus' testimony as irrelevant.

Finally, Appellant argues that the EWOC verdict was against the weight of the evidence.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (internal citations and quotation marks omitted) (emphasis in original). "A motion for

new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

EWOC occurs where "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, […] knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). Appellant argues that the EWOC conviction cannot stand because there is no evidence that Appellant knowingly endangered her child's welfare. Appellant's Brief at 57. This argument fails because it is directed to the sufficiency, rather than weight, of the evidence. A total lack of evidence as to the *mens rea* element would have rendered the evidence insufficient, but a challenge to the weight of the evidence concedes the sufficiency of the evidence, as our Supreme Court wrote in *Widmer*.

Even if we construe this argument as one attacking the weight of the evidence, we discern no abuse of discretion in the trial court's decision not to award a new trial. Appellant notes that she was not home when the fire started, and that her daughter's pediatrician and school principal reported no risk factors for a troubled home life. Regardless, the pictures of Appellant's home, combined with a substantial body of supporting testimony, support a finding that the home had been in poor condition for some time. That Appellant happened not to be home when the fire occurred does not evidence

her lack of knowledge of the home's condition. The same can be said for the testimony of the pediatrician and school principal. We conclude that the trial court did not abuse its discretion in denying Appellant's motion for a new trial.

Because we have found each of Appellant's arguments to be lacking in merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/24/2019