J-S25004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BYRON MINOR | : | |
| | : | |
| Appellant | : | No. 1931 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 20, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0007556-2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                Filed: October 7, 2021

Appellant, Byron Minor, appeals from the judgment of sentence of 20-40 years' incarceration, imposed following his conviction for criminal conspiracy to commit third-degree murder.[1]  Herein, Appellant challenges the sufficiency of the evidence to support his conviction.  After careful review, we affirm.

The Commonwealth provided the following summary of the facts adduced at trial, as follows:[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 903 (conspiracy); 18 Pa.C.S. § 2502(c) (third-degree murder).

[2] The trial court's summary of the facts in its Pa.R.A.P. 1925(a) opinion was exceptionally brief.  Trial Court Opinion ("TCO"), 3/4/21, at 2.  Accordingly, we have reproduced the Commonwealth's summary instead, as it both accurately reflects the record and does not conflict with Appellant's even more comprehensive summary of the facts.  **See** Appellant's Brief at 5-16.

Around 2:00 p.m. on May 21, 2018, [Appellant] spoke on the phone with his friend, co-defendant Eric Johnson. Approximately two hours later, [Appellant] picked Johnson up and drove him to 5th and Central streets in Chester, Pennsylvania. Vincent Franklin, who owed Johnson money in connection with Johnson's drug dealing[,] lived on that block. At 4:24 p.m., as [Appellant] approached the block, Johnson held a gun in his right hand. The pair saw Franklin walking down the street with his girlfriend. [Appellant] slowed his car, Johnson opened the passenger door with his left hand, exited, and began firing a barrage of bullets at Franklin. In total, Johnson fired 22 shots, twice hitting Franklin and killing him. Johnson then ran back to [Appellant]'s waiting car (with the passenger door wide open to hasten their escape), and [Appellant] sped away.

Officer Matthew Bruder of the Folcroft Borough Police Department was on duty when he heard a radio call about the Nissan SUV with New York State plates involved in Franklin's murder. He saw a vehicle matching that description and followed it. After confirming that Chester Police were still looking for the vehicle, Officer Bruder activated his police lights to stop the Nissan. Instead of complying, [Appellant] drove away, fleeing from police. Shortly thereafter, both [Appellant] (the driver) and Johnson (the passenger) jumped out of the moving car and fled in different directions. Officer Bruder pursued Johnson, who pointed his gun at Officer Bruder during the chase. Neither [Appellant] nor Johnson were immediately apprehended.

[Appellant]'s girlfriend, Lydia Rivera, rented the Nissan SUV from Enterprise Car Rental on May 14, 2018. Telephone records admitted at trial show that [Appellant] called Lydia about twenty minutes after Franklin's murder. They spoke two more times in the following five minutes. A minute after that, Rivera called Enterprise and reported the Nissan SUV as stolen. Moments after the call to Enterprise, Rivera called the Chester Police to report the Nissan SUV as stolen. [Appellant] and Rivera spoke 33 times on May 21, 2018[,] in the hours after Franklin's murder. Cell phone records demonstrate that [Appellant] and Johnson reconnect[ed] in Tinicum, Pennsylvania[,] later in the day after the murder.

Commonwealth's Brief at 2-3 (citations omitted).

Appellant and Johnson were jointly tried by a single jury. On November 14, 2019, the jury convicted Appellant of conspiracy to commit third-degree murder, and Johnson of first-degree murder,[3] conspiracy to commit first-degree murder,[4] and carrying a firearm without a license.[5] N.T., 11/14/19, at 107-10. On February 20, 2020, the trial court sentenced Appellant as stated *supra*.

Appellant timely filed an omnibus post-sentence motion ("PSM") on March 2, 2020. He then filed a premature notice of appeal on October 13, 2020. On January 12, 2021, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory due to the pending PSM. On January 20, 2021, Appellant filed a motion in the trial court seeking to have his PSM denied by operation of law. Appellant then answered our rule to show cause on January 22, 2021. The PSM was still pending on April 6, 2021, when this Court issued an order directing the trial court to decide the PSM. The trial court failed to comply with our order, prompting this Court to issue a second order, on June 2, 2021, again directing the trial court to decide the PSM. Finally, on June 6, 2021, *461 days after it was filed*, the trial court entered an order denying the PSM. Subsequently, on June 25, 2021, this Court issued an order referring the matter to the panel. Under these circumstances, we

---

[3] 18 Pa.C.S. § 2502(a).

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 6106.

will treat Appellant's premature notice of appeal as having been timely filed on June 25, 2021.  **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

The trial court ultimately issued its Rule 1925(a) opinion on March 4, 2021, after never having ordered Appellant to file a Rule 1925(b) statement.

Appellant now presents the following issue for our review:

Evidence introduced at trial showed that Appellant's co-defendant, Eric Johnson, got out of the car, approached the victim and started firing a handgun at the victim, who died as a result of several gunshot wounds.  Evidence showed that Appellant Byron Minor, while driving the car that Johnson was riding in, did not get out of the car or in any way partake in the shooting; Appellant and Johnson fled after the shooting and later, when spotted by police. The issue then is whether evidence that Appellant's presence at the scene of the shooting and flight afterwards, is sufficient to convict … Appellant of [c]onspiracy to [c]ommit [t]hird[-d]egree [m]urder.

Appellant's Brief at 4.

Appellant presents a challenge to the sufficiency of the evidence.

A claim challenging the sufficiency of the evidence is a question of law.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law.  When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Here, the jury convicted Appellant of conspiracy to commit third-degree murder. "A conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Spotz*, 756 A.2d 1139, 1162 (Pa. 2000).

> Once a conspiracy is established, the actions of each co-conspirator may be imputed to the other conspirators. In this regard, "[t]he law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design." *Commonwealth v. Baskerville*, 681 A.2d 195, 201 (Pa. Super. 1996). Furthermore,
>
> > [w]here the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties.
>
> *Commonwealth v. Eiland*, 301 A.2d 651 (Pa. 1973).

*Commonwealth v. Geiger*, 944 A.2d 85, 91 (Pa. Super. 2008) (citations reformatted).

To prove third-degree murder, the Commonwealth must establish that the accused

- 5 -

killed another person with malice. ***Commonwealth v. Hardy***, 918 A.2d 766, 774 (Pa. Super. 2007).

> The elements of third[-]degree murder, as developed by case law, are a killing done with legal malice but without specific intent to kill required in first[-]degree murder. Malice is the essential element of third[-]degree murder, and is the distinguishing factor between murder and manslaughter.
>
> ***Commonwealth v. Cruz–Centeno***, 668 A.2d 536, 539 (Pa. Super. 1995)….
>
> Malice under the law "comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intending to be injured." ***Commonwealth v. Thomas***, 594 A.2d 300, 301 (Pa. 1991) [(citation omitted)]. "Malice may be inferred from the 'attending circumstances of the act resulting in death.'" ***Commonwealth v. Lee***, 626 A.2d 1238, 1241 (Pa. Super. 1993…. Otherwise stated, malice may be found where the defendant has consciously disregarded an unjustified and extremely high risk that her conduct might cause death or serious injury to another.

***Geiger***, 944 A.2d at 90 (citations reformatted, some citations omitted).

In the case *sub judice*, it is undisputed that Johnson, who was convicted of first-degree murder, fired the shots that killed Franklin. Thus, Appellant's conviction is solely premised upon his culpability as a co-conspirator to the killing of Franklin. Appellant first argues that the Commonwealth's evidence established only that he was present at the scene of the crime, and that he subsequently engaged in flight from police, facts which he contends were insufficient, even in combination, to establish his participation in a conspiracy with Johnson.

Second, Appellant argues that there was no evidence of a common scheme or plan to harm the victim. In this vein, Appellant first asserts that there was no evidence presented by the Commonwealth to demonstrate his motive to assist Johnson in the shooting of Franklin. Appellant claims that he "was not present for any of Johnson's drug transactions with Franklin" and that "no evidence was offered to show that Appellant even knew Johnson was in the drug trade." Appellant's Brief at 23. He contends that

> [t]here is no evidence Appellant knew … Franklin, or even knew who he was. No evidence was introduced to show that Appellant was aware that Johnson sold drugs to Franklin or that Franklin owed Johnson money. Police obtained … Franklin's cell phone in the days after the homicide; examination of the phone revealed no contact between Appellant and Franklin. No other evidence was offered to show Appellant had a motive to harm Franklin.

*Id.* at 24-25.

Finally, Appellant asserts that the Commonwealth failed to produce any evidence that he knew beforehand that Johnson would jump out of the vehicle and shoot Franklin. He claims that the "video does not show what Appellant was doing as Johnson fired at Franklin and no evidence was offered to show that Appellant was acting as a lookout. Appellant did not stop the vehicle so that Johnson could jump out; Appellant stopped at a stop sign[.]" *Id.* at 25. Appellant further argues that the was no evidence "offered to show that the shooting was planned." *Id.* at 27. In this regard, Appellant states that:

> There is no evidence that either Appellant or Johnson [was] aware that Franklin ha[d] just awoken or that he was walking in the area. In fact[,] there was no evidence that either Appellant or Johnson even knew where Franklin resided. Moreover, there was no

evidence that Appellant drove the Nissan on Central Avenue at any other time that day.

***Id.*** Appellant concludes that, "for the jury to find that Appellant knew of Johnson's intentions, and came to a meeting of the minds with Johnson as to those intentions, would be guess, speculation[,] and conjecture." ***Id.*** at 28.

The trial court rejected Appellant's sufficiency claim, reasoning as follows:

> In the instant case, the Commonwealth put forth circumstantial evidence that [Appellant] agreed to and aided co-defendant Johnson in the shooting of the victim, who died as a result of the gunshot wounds. [Appellant] and … Johnson had been in communication leading up to the shooting, [Appellant] drove … Johnson to the victim's home and slowed the vehicle down when he noticed the victim outside in front of his home. [Appellant] waited while … Johnson fired twenty-two shots at [the] victim and got back in the vehicle, prior to fleeing the scene. Thereafter, [Appellant] remained in the vehicle with … Johnson until the police attempted a vehicle stop, at which point, both individuals exited the vehicle while it was still in motion and fled the scene. In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, based on the evidence presented, under the facts and circumstances in this case, it was reasonable for the jury to find, beyond a reasonable doubt, that [Appellant] conspired with … Johnson to shoot the victim and did so with conscious disregard for the value of human life. The evidence was sufficient to support the verdict finding [Appellant] guilty to [c]onspiracy to [c]ommit [t]hird-[d]egree [m]urder.

TCO at 6.

We will first address Appellant's assertion that the evidence produced at trial solely consisted of his mere presence at the scene, and his subsequent flight from police. The Commonwealth did not merely present evidence of Appellant's presence at the scene and his subsequent flight from police. The Commonwealth produced evidence demonstrating that Appellant and Johnson

- 8 -

were friends, that they communicated with each other prior to the shooting, and that Appellant waited in the vehicle when Johnson got out of the vehicle and fired 22 shots at the victim. Additionally, Appellant contacted his girlfriend immediately after the shooting, and asked her to mislead both police and the rental company by telling them that the Nissan had been stolen. Furthermore, after their *coordinated* flight from police,[6] Appellant and Johnson met up with each other later that same day. Thus, Appellant's claim that the Commonwealth only demonstrated his presence at the scene and his flight from police is belied by the record.

Appellant further claims that the Commonwealth failed to demonstrate his motive to assist Johnson in the shooting of Franklin. However, while evidence of motive is almost always admissible and relevant in a murder prosecution, motive is not itself an element of either murder or conspiracy. *See Commonwealth v. Shain*, 426 A.2d 589, 591 (Pa. 1981) ("In establishing an accused's guilt in a homicide case, the prosecutor is not required to show motive."); *see also Commonwealth v. Holland*, 389 A.2d 1026, 1034 (Pa. 1978) ("Motive, while sometimes relevant factually, is not an element of the crime charged which the Commonwealth must prove. If the Commonwealth presents sufficient evidence concerning the elements of the crimes charged, its failure to offer evidence of motive does not, as a matter

---

[6] As noted in the summary of the facts above, Appellant and Johnson jumped from the Nissan at the same time as it was still moving, and then ran in opposite directions, indicating a coordinated attempt to thwart further pursuit by the police.

of law, raise a reasonable doubt.") (citation omitted). Thus, the Commonwealth's failure to demonstrate Appellant's motive to assist Johnson in the slaying of Franklin does not render the evidence insufficient to convict Appellant of conspiracy to commit third-degree murder. **See Holland**, **supra**.

Finally, Appellant asserts that the evidence was insufficient to show any prior plan with Johnson to harm or kill Franklin. However, as noted in **Spotz**, "[b]ecause it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." **Spotz**, 756 A.2d at 1162. We conclude that, in the circumstances of this case, the evidence was sufficient to allow the jury to infer that Appellant had an agreement to assist Johnson in the attack on Franklin, based on the following facts.

First, Appellant and Johnson were friends according to Appellant's girlfriend, Rivera, **see** N.T., 11/13/19, at 20, and they were in communication with each other earlier in the day according to cell phone evidence presented by the Commonwealth, **id.** at 101-02. Thus, Appellant's "presence at the scene" was not coincidental. He drove Johnson to the scene of the crime. Second, the evidence demonstrated that Appellant stopped the vehicle near Franklin, allowing Johnson to exit and fire his weapon 22 times. **See** N.T., 12/12/19 at 61 (Officer Murphy's describing Franklin's account of the shooting before he died); **id.** at 71 (Officer Linowski describing his discovery of 22 shell casings at the scene). Appellant did not flee but, instead, remained at the

scene as the shooting occurred and waited for Johnson to reenter the vehicle, thereby facilitating Johnson's escape.

Third, Appellant continued to drive Johnson away from the scene of the crime until Officer Bruder encountered the Nissan about 20 minutes after the shooting. *See id.* at 90 (Officer Bruder describing his encounter with the Nissan). Thus, despite witnessing Johnson fire 22 shots at the victim, Appellant continued to drive him for an additional 20 minutes after the shooting. At that time, Appellant and Johnson simultaneously exited the vehicle in opposite directions, *see id.* at 96-97, further demonstrating 1) that Appellant and Johnson were acting in concert, and 2) Appellant's consciousness of guilt.[7]

Fourth, Appellant's girlfriend testified that, following the shooting, Appellant directed her to report the Nissan stolen to both police and the rental company. N.T., 11/13/19, at 27-29. This was further evidence of Appellant's consciousness of guilt. Fifth, Appellant and Johnson again met up later the same evening after their coordinated flight from the Nissan,[8] further

_____

[7] "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred[.]" *Commonwealth v. Coyle*, 203 A.2d 782, 789 (Pa. 1964).

[8] This can be reasonably inferred from the fact that Appellant's and Johnson's cell phones were tracked in different locations after they separated, until their phones were later found to be "pinging" off the same cell tower in Tinicum after approximately 9 p.m. that evening. *See* N.T., 11/13/19, at 110-14. Appellant and Johnson called each other ten times on the day of the shooting, but not once after their phones were linked to the Tinicum location. *Id.* at 116.

demonstrating that they had acted in concert. Based on the foregoing, we agree with the trial court and the Commonwealth that the evidence was sufficient to allow the jury to infer that Appellant intended to aid, and in fact agreed to aid Johnson in the attack on Franklin, based on the totality of the evidence that showed that they acted in concert before, during, and after the shooting.

Finally, we are unpersuaded by Appellant's attempts to contrast this case with the facts in **Commonwealth v. Lambert**, 795 A.2d 1010 (Pa. Super. 2002). In **Lambert**, this Court held that the evidence was sufficient to support Lambert's conviction for burglary, criminal conspiracy, and second-degree murder. **Id.** at 1025. Lambert was convicted based on his participation in a burglary conspiracy, where his co-defendant fatally shot the victim in the head. Lambert "served as an accomplice to the commission of the burglary" as he "drove [his c]o–[d]efendant to the scene of the crime, waited during the commission of the crime[,] and facilitated the flight afterwards." **Id.** at 1022. Similarly, here, Appellant drove Johnson to the scene of the crime, waited for him while Johnson fired 22 shots at the victim, and then facilitated Johnson's escape, first by immediately driving Johnson away from the scene of the crime and, later, by coordinating their escape from police when Officer Bruder attempted to stop the Nissan. Furthermore, Appellant demonstrated further consciousness of guilt by directing his girlfriend to report the Nissan as stolen as he was assisting Johnson flight from police. **Lambert** therefore offers Appellant no relief.

- 12 -

Accordingly, for all the aforementioned reasons, we conclude that Appellant's sufficiency claim lacks merit.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/21